**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 2:24-cr-176** |
| | : | |
| Plaintiff, | : | **JUDGE MICHAEL H. WATSON** |
| v. | : | |
| | : | |
| **IRA ROBERTS,** | : | **GOVERNMENT'S SENTENCING** |
| | : | **MEMORANDUM** |
| Defendant. | : | |

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum for the sentencing of Defendant Ira Roberts (Defendant or Roberts). The parties entered into a plea agreement pursuant to Rule 11(c)(1)(C), with an agreed-upon range of imprisonment of 96–130 months. For the reasons below, the United States recommends a sentence of 130 months' incarceration, followed by four years of supervised release.

**I.     Background**

As part of the investigation into Ira Roberts' drug trafficking, there were seven controlled purchases where Roberts, or an associate of Roberts, sold cocaine in transactions monitored by law enforcement. The transactions took place between approximately January, 2024, and May, 2024. Each of the transactions took place at Roberts' apartment complex on Camp Chase Drive in Columbus, Ohio. The amounts sold ranged from approximately 6 grams of cocaine to approximately 29 grams of cocaine. For each transaction, Roberts communicated that he had cocaine for sale, directed the buyer where to go and when to go there to obtain the cocaine, and negotiated the price of the transaction. The total weight of the seven controlled buys came to approximately 105.7 grams of cocaine.

Roberts' telephone and social media activity indicated he was obtaining and selling large amounts of cocaine for resale. On multiple occasions in 2024, Roberts worked to purchase

anywhere from 9 ounces of cocaine to a half kilogram of cocaine from a supplier. His text messages and subsequent investigation demonstrate that he purchased quarter-kilo amounts for re-sale on at least four occasions in 2024. In addition, on June 4, 2024, Roberts texted a coconspirator to brag that he trafficked at least 2 kilograms of cocaine per month. Roberts' Facebook conduct further demonstrated the extent of his drug trafficking. In a host of Facebook messages, Roberts often detailed the nature of his drug transactions, how much cocaine he needed to obtain, and how cocaine much he had left, among other drug-related topics. A conservative estimate of the cocaine he possessed or trafficked from those messages is 2 kilograms. The messages in Facebook indicate that Roberts was working with others regarding his cocaine sales from around late 2023 through 2024.

Based on his conduct, Roberts was charged by way of complaint on November 13, 2024, with conspiring to distribute a controlled substance, in violation of 21 U.S.C. § 846. On November 26, 2024, he was then charged in a multi-count indictment with: Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. § 846 [Count 1]; and Distribution of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) [Counts 2–8]. On June 25, 2025, the Defendant pled guilty to Count 1 pursuant to a plea agreement entered into under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The agreement included an agreed-upon sentencing range of 96–130 months. Count 1 carries with it a mandatory minimum term of imprisonment of five years, and up to 40 years' imprisonment. A final PSR has been issued. As described below, multiple objections remain. Sentencing in this matter is scheduled for January 27, 2026, at 11:00 a.m.

## II. Guidelines/Presentence Report

The PSR found:

2

- A base offense level of 26, based on the amount of cocaine at play in the conspiracy (U.S.S.G. §§ 2D1.1(a)(5) and (c)(7));
- A two-level increase for possession of a dangerous weapon (*id.* § 2D1.1(b)(1));
- A two-level increase for maintaining a premises for the purpose of distributing a controlled substance (*id.* § 2D1.1(b)(12));
- A two-level increase for involving someone in the drug-dealing who was 65 or older, given that the defendant used his mom as one of his drug dealers (*id.* §§ 2D1.1(b)(16)(b)); and
- A four-level increase for the defendant's status as a manager or supervisor (but not an organizer or leader) regarding criminal activity that involved five or more participants or was otherwise extensive (*id.* § 3B1.1(a)).

The adjusted offense level came to a 36. Factoring in acceptance of responsibility, the total offense came to a 33, and, with a Criminal History category of III, the resulting range came to 168–210 months. The Probation Officer did not identify any factors warranting departure from the Guidelines range. (PSR ¶ 150.) A five-year mandatory minimum sentence applies in this case. (*Id.* ¶ 98.)

The defendant brings multiple objections, all of which should be overruled.

*Objection 1.* He first objects to information contained within the PSR pertaining to the quantity of cocaine trafficked, his sale of cocaine in exchange for U.S. currency and a firearm, and him utilizing a premises for the distribution of narcotics as outlined in the PSR. The objection misses the mark. The information to which the defendant objects is factually accurate based on the investigation. And second, the Sixth Circuit has made clear that a defendant has to do more than just disagree with facts in the PSR for there to even be a basis to consider an objection. To put a point on it: "[A] defendant who challenges factual allegations in the PSR . . . has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." *United States v. Moore*, No. 24-1427, 2025 WL 789557, at *11 (6th Cir. Mar. 12, 2025). The defendant does not meet this standard here. His objection should be overruled.

3

***Objection 2.***  Roberts next objects to the amounts of cocaine listed in the PSR, which, when added together, led to the PSR's conclusion that the conspiracy involved more than 3 kilograms of narcotics (thus amounting to a base offense level of 26).  The information listed in the PSR is accurate.  That said, the parties agreed to a base offense level of 24, and the government intends to honor that agreement.

***Objection 3.***  Roberts also objects to the factual findings regarding his pending local case (in Docket No. 24CR6356), which are detailed in the Pending Charges section of the presentence report.  The defendant is incorrect.  This objection pertains to the facts of Ira Roberts shooting someone over a minor disagreement near his apartment complex.  Because of that minor disagreement, Roberts fired two different guns toward a crowd of people—one a handgun, and one that resembled some kind of rifle.  Roberts struck a victim in the back; the victim is lucky to be alive.  This is all captured on film.  The facts are accurately listed, and the objection should be overruled.

***Objection 4.***  The defendant objects to the firearm enhancement in Paragraphs 26 and 27, which was applied because he possessed firearms while he dealt drugs.  The PSR properly drew this conclusion from the facts at play.  Roberts' own messages make clear that he was possessing firearms while he dealt drugs.  For example, in one of the messages at issue, from April 13, 2023, Roberts sent his son a picture of Roberts holding a firearm.  When Roberts' son said, "That bitch is raw for sure," Roberts responded by saying he got the gun in exchange for "250 and . . . [a] half zip…[o]f cut."  This is Roberts admitting he sold drugs in exchange for a gun.  On August 20, 2023, Roberts sent his son a picture of him possessing a firearm.  These are just a few examples of Roberts being near firearms are possessing firearms while dealing drugs.  Roberts also possessed a firearm on video when he shot someone over a minor disagreement at the Camp Chase apartment complex, which is detailed in paragraph 68.  These are clear enough examples to qualify

4

for the firearms enhancement, given that he documented his own gun possession and then also possessed a gun on film while shooting someone. On camera. Once this is established, the guideline commentary to 2D1.1, in n.11(A), makes clear that the enhancement should be applied "unless it was clearly improbable that the weapon was connected with the offense." Here, the defendant described how he traded drugs for a gun. Therefore, it was not clearly improbable that the weapon was connected to his drug offense.

*Objection 5.* Finally, the defendant objects to receiving the premises enhancement under U.S.S.G. § 2D1.1(b)(12). According to the Sixth Circuit, the question here is whether the home at issue "played a significant part" in the defendant distributing drugs. *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014). Here, the defendant regularly dealt drugs from his house, conducted 7 controlled purchases from his house, and directed individuals to his house for the purpose of buying drugs. Moreover, the defendant had no other real job to speak of besides being a drug dealer. This qualifies for the enhancement. *See id.* ("From January 2011 to October 2012, Bell had no job other than cooking crack cocaine and selling it. He cooked the cocaine in the kitchen of his house. The house contained the 'tools of the trade': a digital scale, drug-packaging materials, and police scanners. The home contained 'a large sum of cash' in a safe—almost $4,000—at a time when Bell had no other employment. Then there are the guns and drugs inside Bell's truck, apparently the means by which Bell distributed the drugs. Taken together, this evidence supports the enhancement." (citations omitted)).

\* \* \*

If the Court were to agree with the government, the adjusted offense level would come to 34, which is two points lower than the adjusted offense level listed in the PSR. With acceptance, this would bring the total offense level to 31. Factoring in a criminal history of III would bring the guidelines range to 135–169 months' imprisonment.

**III.     The Proper Sentence**

Sentencing requires a determination of the applicable guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Based upon these factors, the government seeks a middle-of-the-range sentence of 130 months' imprisonment, followed by four years of supervised release.

***The nature and circumstances of the offense; seriousness of the offense:*** This is a serious offense. Narcotics are harmful to the community, and this was a serious narcotics trafficking offense. The Defendant wasn't a small-time dealer. The conspiracy involved kilograms of dangerous and illegal narcotics. This is serious.

Sometimes we all get used to seeing street drugs that, one might think, are more serious than cocaine. But cocaine is serious in its own right. Drugs are illegal for a reason—they're harmful to the community. They sow discord. They promote instability. They cause problems that last much longer than the time their users use them and their sellers sell them. They also bring risk. That is, because of the risk associated with dealing them, the drug trade tends to present danger, whether in the form of possible violence, or in the form of poison flooding into the community. Either way, the defendant's operation is precisely the kind that presents harm to the community in many forms, and his sentence should reflect the scale of his operation and the harm he posed to the Southern District of Ohio.

***History and characteristics of the Defendant; deterrence.*** The Defendant's history and characteristics further support the government's recommendation of a sentence of 130 months.

First, the defendant is extremely dangerous. As explained in the PSR, he possessed guns in the context of his drug dealing. Worse yet: He shot someone on film. As the video shows, Roberts shot toward a crowd of people fleeing, and did so with two different guns—all over a disagreement about items being thrown away in a dumpster.

6

The shooting is telling in several ways. It shows that Roberts didn't mind killing someone over something as trivial as an argument about a dumpster near an apartment complex. It shows that he's the kind of guy who will do whatever he wants, when he wants, regardless of the repercussions. And it shows he's the kind of guy who feels the need to carry a gun on him all the time—even when (or really because, most likely) he's illegally dealing narcotics. In other words, it shows that he's the kind of guy who is very, very dangerous, and who has no problem endangering the lives of people around over minor issues. This all supports the government's requested sentence.

Moreover, Roberts' criminal history further bolsters the reality that he is a dangerous drug dealer. The defendant has a history of dangerous activity. As the Court can see, that criminal history is substantial. Several offenses, even by themselves, merit attention:

- He has a prior robbery conviction.
- He has a prior domestic violence conviction, which involved him striking his then-girlfriend in the head and chest with his fist, and kicking her in the ribs while she was on the ground.
- He has a prior felonious assault conviction, which came from him striking the manager of an Odd Lots store in the side of his face. (The manager fractured his mandible and orbital bones as a result.)
- He has a disorderly conduct conviction, the result of him kicking the rear passenger window of a Franklin County Sheriff's Department cruiser, and attempting to resist arrest by pulling away from and swinging at a deputy sheriff with a closed fist.
- He has another domestic violence incident from 2003.
- He has an aggravated menacing conviction from 2004 after he trespassed onto someone else's property and caused physical harm to a female victim.
- He has a resisting arrest conviction from when he kicked a CPD officer in the stomach during an arrest.
- He has another domestic violence conviction from 2006, when he slapped a female victim in the mouth and kicked her in the buttocks.
- He has drug convictions from 2005 and 2006.
- ***He has a federal cocaine-trafficking conviction from 2008.***
- And he has a violation of a protective order from 2023.

The above doesn't include his dismissed charges, too, which include four dismissed domestic-violence charges, among others.

Viewed through a broader lens, the defendant's conduct is part of a steady stream of convictions that paints the picture of a person who has the tendency to endanger those around him, and of someone who has trouble living a law-abiding life for very long at all.

The public needs protected from the defendant.  The defendant sold drugs that present serious harm to the community.  He did so while possessing guns at the same time.  And he has a history of violent conduct, as well as of conduct that shows a lack of regard for the law or those around him.  In addition, the defendant's prior sentences have not deterred him from re-offending.  He has largely evaded the full weight of the criminal justice system to date.  The government in this case simply seeks a sentence that conveys the proper message to the defendant: any further transgressions will result in correspondingly serious sentences.

The United States submits that a term of incarceration of 130 months would be sufficient but not greater than necessary to protect the community, deter further criminality, and advance the ends of sentencing.

**IV. Conclusion**

For the reasons stated, the United States respectfully recommends that Defendant Ira Roberts be sentenced to a term of incarceration of 130 months, followed by five years of supervised release. The government submits that this sentence is sufficient but not greater than necessary to satisfy the statutory purposes set forth in 18 U.S.C. § 3553(a).

    Respectfully submitted,

    DOMINICK S. GERACE II
    United States Attorney

    *s/S. Courter Shimeall*
    ELIZABETH A. GERAGHTY
    S. COURTER SHIMEALL
    Assistant United States Attorneys
    303 Marconi Boulevard, Suite 200
    Columbus, Ohio 43215
    O: (614) 469-5715 / F: (614) 469-5653

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Government's Sentencing Memorandum* was electronically served via the Court's CM/ECF system this 17th day of December, 2025, upon counsel of record for Defendant Ira Roberts.

    *s/S. Courter Shimeall*
    S. COURTER SHIMEALL (0090514)
    Assistant United States Attorney